Commonwealth *v.* Feliciano.

COMMONWEALTH *vs.* ISMAEL FELICIANO & another.[1]

Suffolk. September 7, 2004. - October 28, 2004.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Rape. Indecent Assault and Battery. Evidence,* Production on demand, Privileged communication, Medical record, Communication with social worker, Communication between patient and psychotherapist, Cross-examination, Sexual conduct. *Privileged Communication. Supreme Judicial Court,* Appeal from order of single justice. *Practice, Criminal,* In camera inspection, Interlocutory appeal, Report.

This court concluded that a single justice of this court has the authority under G. L. c. 211, § 3, to review an interlocutory order of a panel of the Appeals Court. [731-732]

This court concluded that where a trial court judge in a criminal action, acting pursuant to stage two of the protocol established in *Commonwealth* v. *Bishop,* 416 Mass. 169, 181-183 (1993), and refined in *Commonwealth* v. *Fuller,* 423 Mass. 216, 225-227 (1996), orders privileged records of a victim to be sealed as not containing evidence relevant and material to a criminal defendant's case, appellate reexamination of those records is required only when the defendant satisfactorily meets the standard triggering in camera review at the trial court level and, on appeal, the defendant seeks such reexamination [732-734]; further, where two defendants who had been convicted of rape and indecent assault and battery on a person over the age of fourteen sought reexamination of a Superior Court judge's order that certain counselling records be sealed, this court concluded that the defendants' initial proffers were sufficient to require reexamination by this court, that the Superior Court judge did not abuse his discretion in ordering those records sealed, and that the defendants' trial counsel had access to certain records that the defendants specifically sought [734-736].

At the trial of indictments charging rape and indecent assault and battery on a person over the age of fourteen, the judge did not exercise her discretion to limit the defendants' cross-examination of the victim, and therefore, no finding of an abuse of that discretion was possible [736-737]; moreover, the judge did not err in refusing as fact finder to consider certain references to sexualized conduct in the victim's medical record [737-738].

INDICTMENTS found and returned in the Superior Court Department on July 19, 1999.

Motions for access to privileged records were heard by *Mitchell J. Sikora, Jr.,* J., and *Richard J. Chin,* J., respectively, and the cases were heard by *Carol S. Ball,* J.

---

[1] Hector Robles.

After an appeal had been filed in the Appeals Court, an application for leave to prosecute an interlocutory appeal from an order of that court was allowed by *Spina*, J., in the Supreme Judicial Court for the county of Suffolk, and the appeal was reported by him to this court. Following that, a panel of Justices of the Appeals Court reported the remainder of the appeal to this court.

*David M. Skeels*, Committee for Public Counsel Services, for Ismael Feliciano.

*Holly T. Smith* for Hector Robles.

*Gail M. McKenna*, Assistant District Attorney, for the Commonwealth.

SPINA, J. The defendants, Ismael Feliciano and Hector Robles, were convicted of aggravated rape and indecent assault and battery on a person over the age of fourteen following a jury-waived trial in Superior Court. On appeal, the defendants argue that (1) we should reexamine certain records that a judge in the Superior Court, not the trial judge, ordered sealed pursuant to stage two of the *Bishop-Fuller* protocol, see *Commonwealth* v. *Fuller*, 423 Mass. 216, 225-227 (1996); *Commonwealth* v. *Bishop*, 416 Mass. 169, 181-183 (1993), and make a de novo determination of relevancy; (2) the trial judge erred by refusing to allow counsel to cross-examine the victim concerning an alleged prior false allegation of rape; and (3) the trial judge erred by refusing to consider evidence of the victim's sexual conduct that was relevant to the defense of consent.

After hearing argument on the matter, a panel of the Appeals Court issued an order that the sealed records be transmitted by the Superior Court for review "in conjunction with its consideration of the pending appeal." The Commonwealth petitioned a single justice of this court for relief from this interlocutory order pursuant to G. L. c. 211, § 3. After consideration of the petition, the single justice reserved and reported the case without decision for the determination of two questions: (1) whether a single justice of this court has authority under G. L. c. 211, § 3, to review an interlocutory order of a panel of the Appeals Court; and (2) whether an appellate court may reexamine sealed, privileged records of a victim absent a

showing that a judge in the trial court abused his discretion under stage two of the *Bishop-Fuller* protocol in determining that the sealed records do not contain relevant evidence. In light of the single justice's reservation and report, the Appeals Court then reported the defendant's direct appeal in its entirety to this court pursuant to G. L. c. 211A, § 12.

We received briefing and oral argument on both the single justice's reported questions and the underlying appeal. In this consolidated opinion, we address the case in its entirety and affirm the judgments.

1. *Background.* The victim was a seventeen year old female. At the time of the incident, she was a full-time resident of the May Center for Education and Neurorehabilitation (May Center), where she was receiving treatment for brain injuries she had sustained from surgeries to remove a cancerous tumor. On some weekends, the victim was released from the May Center to visit with her family in Abington. During one of these visits, she went to a nearby park, where the incident occurred in a wooded area. There is no evidence or testimony indicating that the victim had ever met the defendants before that day. Feliciano testified to having sexual relations with the victim, but claimed it was consensual and at her instigation. Robles did not testify.

The defense sought access to records generated in the course of counseling between the victim and a licensed social worker at the May Center. Based on grand jury testimony of the victim's father that she sometimes makes up a story to get something she wants, and a nolle prosequi of a previous rape case involving this same victim, counsel moved for disclosure of information in the victim's counseling records concerning her tendency to imagine or to fabricate, and any reference to the prior rape case. After hearing and review of the parties' submissions, a judge in the Superior Court applied stage one (privilege determination) and the first part of stage two (relevancy determination) of the *Bishop-Fuller* protocol. *Commonwealth* v. *Pare*, 427 Mass. 427, 429-433 & nn.4-5 (1998). He determined that the May Center documents were privileged within the meaning of G. L. c. 112, §§ 135A and 135B, and that the defense had proffered "a good faith, specific, and reasonable basis for believing that the [requested] records will contain

exculpatory evidence." *Commonwealth* v. *Fuller*, 423 Mass. 216, 226 & n.9 (1996). Specifically, and limiting himself to the subject and scope of the proffer, the judge found the records might be relevant to the victim's credibility. He therefore ordered the parties to arrange to submit the social worker counseling records for in camera review.

The remainder of stage two, the in camera review of "psychiatric and counseling records" from the May Center for relevance, was conducted by a different judge after he received a written statement from defense counsel that production of the material comprised a necessary and final phase of discovery.[2] The judge identified the portion of the records which he deemed to be relevant and "separated out the non-relevant portions and sealed them for possible appellate review." He then issued an order to permit access by defense counsel to the records the judge had determined were relevant, in compliance with stage three of the *Bishop-Fuller* protocol (access to relevant material).

*2. Jurisdiction of the single justice.* One question reported by the single justice was an inquiry into his authority under G. L. c. 211, § 3, to review an interlocutory order of a panel of the Appeals Court. The question has been rendered moot by the Appeals Court's report of the direct appeal to the full court. However, the question is one of public importance involving the administration of the courts, and could arise again in a similar fashion, evading review. The issue has been fully briefed by the Commonwealth, and the defendants, though not briefing the matter, have raised no objection to jurisdiction. For these reasons, we will address the question. See *Wilson* v. *Commissioner of Transitional Assistance*, 441 Mass. 846, 850 (2004).

General Laws c. 211, § 3, provides, in part:

> "The supreme judicial court shall have general superintendence of all courts of inferior jurisdiction to correct and prevent errors and abuses therein if no other remedy is expressly provided; and it may issue all writs and processes

---

[2]*Commonwealth* v. *Fuller*, 423 Mass. 216, 226 (1996) ("A motion for the production of [privileged] records should be the last step in a defendant's pretrial discovery, premised on defense counsel's analysis of the Commonwealth's case and counsel's own investigation of the matter and a showing that the material is not available elsewhere").

to such courts and to corporations and individuals which may be necessary to the furtherance of justice and to the regular execution of the laws."

An interlocutory order of a panel of the Appeals Court is a determination of a court of inferior jurisdiction that is reviewable under G. L. c. 211, § 3, if the other criteria of the statute are met.

When acting on such a petition, a single justice is empowered to act to the same extent and measure as the full court. A power conferred by statute on a "court" refers to "the court held, whether by one or more judges, at a time and place established by law for the . . . administration of justice." *Empire Apartments, Inc.* v. *Gray*, 353 Mass. 333, 335 (1967), quoting *Catheron* v. *County of Suffolk*, 227 Mass. 598, 602 (1918). Neither the status of the Appeals Court as another appellate court of the Commonwealth nor the rarity of such a petition creates an exception to this rule.

3. *Appellate review of sealed records under* Bishop-Fuller. The other question reported by the single justice addresses what showing by the moving party is required to prompt an appellate court to reexamine documents placed under seal during stage two of the *Bishop-Fuller* protocol, in order to determine whether a lower court abused its discretion in so sealing them.

The defendants have requested that the sealed records in this case be reviewed to confirm that defense counsel were given access to all exculpatory evidence which was relevant and material to the defendants' cases. The Commonwealth opposes any reexamination of the documents by any appellate court prior to a prima facie showing by the defendants that the stage two judge below abused his discretion in performing his in camera review. For this proposition the Commonwealth cites *Commonwealth* v. *DeMaria*, 46 Mass. App. Ct. 114, 121 (1999), quoting *Commonwealth* v. *Fuller*, 423 Mass. 216, 225 (1996), emphasizing that "[a]n in camera review, while less intrusive than public disclosure or disclosure to a defendant's attorney, 'is nonetheless a substantial invasion of the privacy of a complaining witness.' "

A judge's decision to seal certain privileged records as containing no relevant evidence of the type specified in a suf-

ficient stage two proffer is made in a "black box." Defense counsel have neither seen the records nor have they been made privy to the judge's reasons. To hold the defendants to a prima facie showing of abuse of discretion when they have not seen the records which were sealed and have no knowledge of the judge's reasons for placing the documents under seal effectively would eliminate appellate review of in camera decision-making for all but those abuses somehow made public through other means. Such a regime of virtually unreviewable authority is not what we outlined in *Bishop.* On the contrary, *Bishop* specifically provides that, at the end of a stage two in camera review, "[t]he judge should identify the irrelevant materials so that in the case of conviction and appeal they may be sealed and transmitted to the reviewing court." *Commonwealth* v. *Bishop,* 416 Mass. 169, 182 (1993). Where counsel has made a sufficient stage two proffer and records have been sealed, appellate courts have examined all the sealed records to review the judge's determination of relevancy, within the scope of the proffer, under the deferential abuse of discretion standard. See *Commonwealth* v. *Reed,* 417 Mass. 558, 562 & n.4 (1994); *Commonwealth* v. *Pare,* 43 Mass. App. Ct. 566, 572 (1997), *S.C.,* 427 Mass. 427 (1998); *Commonwealth* v. *Syrafos,* 38 Mass. App. Ct. 211, 215-216 (1995). Where the original proffer did not make a plausible showing of relevance, the reviewing court will not reexamine the sealed records. See *Commonwealth* v. *DeMaria, supra* at 120-121.

We make clear today that appellate reexamination of stage two in camera review is required only when a defendant satisfactorily met the standard triggering in camera review at the trial level.[3] See *id.,* quoting *Commonwealth* v. *Fuller, supra* at 226. If, as a matter of law, the defendant's initial proffer before the motion judge was sufficient, and on appeal, the defendant seeks review, then an appellate court should proceed to review the judge's in camera decision-making as to relevance

---

[3] It has become clear, as our common law has developed, that the heightened *Fuller* standard of relevance applies to all cases in which the defendant seeks privileged treatment records. See *Commonwealth* v. *Oliveira,* 431 Mass. 609, 616-617 (2000), *S.C.,* 438 Mass. 325 (2002); *Commonwealth* v. *Zane Z.,* 51 Mass. App. Ct. 135, 142-143 (2001).

within the scope of the proffer, using a deferential abuse of discretion standard. *Commonwealth* v. *Pare, supra* at 572. A prima facie showing of abuse of discretion is not necessary.

While we will not endorse "unrestrained foray[s] into confidential records," *Commonwealth* v. *Bishop, supra* at 182, in some situations a review, though certainly an additional intrusion into the privacy of a complaining witness, is necessary to preserve the standards of justice and fairness. Cf. *Commonwealth* v. *Collett,* 387 Mass. 424, 438 (1982).

4. *Underlying appeal.* a. *Sealed* Bishop-Fuller *documents.* We return to the defendants' request that the sealed records be reviewed to determine if they contain any exculpatory evidence that was relevant and material to the defendants' cases to which defense counsel should have been given access.

The defendants are interested in appellate reexamination because counsel in stage three had access to portions of a document containing relevant information, and they assert that five pages of that document apparently were withheld. Particularly, five loose pages to which they received access appear to be pages six through ten of a ten-page neuropsychologist report, inferred from the pagination format in the style "X of 10." In addition to the page numbering, the header on all of the sheets includes the victim's name and what appears to be a medical case number. The sheets are not dated, but page seven states that the victim was then fifteen. One of the loose sheets, under a subheading captioned "social-emotional/behavioral development," includes the following: "[the victim] has been known to completely make up stories to tell others . . . she continues to be impulsive and erratic in her behaviors, including an episode of a sexual encounter." The defendants contend that the first five pages of the report likely would contain further information regarding habits of untruthfulness or the referenced sexual encounter and that such information might have bolstered their defense of consent.

As to the threshold issue, we are satisfied that, as a matter of law, the defendants' initial proffers before the motion judge

were sufficient.[4] The Commonwealth does not dispute the point. A reexamination of the in camera stage two *Bishop-Fuller* analysis under an abuse of discretion standard is therefore appropriate.

To perform our review of the motion judge's in camera determination, we broke the intact seal of the documents he had determined to be "irrelevant." Somewhat unexpectedly, given the assumptions of all involved in this appeal, we did not find pages one through five of a ten-page neuropsychologist report in the sealed envelope.

After our review of the documents which actually were under seal, we are able to affirm the motion judge's determination. Generally speaking, the sealed records are made up of May Center administrative correspondence and forms, prescriptions, progress reports, and medical test results. None of the documents under seal had any relevance to the victim's credibility. Certainly, therefore, no abuse of discretion occurred. The documents have been resealed and returned to the custody of the clerk of the Superior Court in Plymouth County.

Because we had not found the pages which the defendants specifically seek, we turned to the rest of the record, including the documents that the motion judge had determined were relevant and to which counsel had access. The envelope of relevant documents contains a total of 184 sheets of paper. Some of these are stapled into packets, but the majority are loose. Among these are the five loose pages of the neuropsy-

---

[4]Because the defendants made no renewed proffer of relevance of the sealed documents over the course of the trial based on changed circumstances, the defendants' pretrial proffer of relevance limits our review.

The defendants cite *Commonwealth* v. *Bishop*, 416 Mass. 169, 183 (1993), for the proposition that the trial judge had a continuing obligation to release information without the need for a renewed motion from the defense. "[T]he duty to disclose is ongoing; information that may be deemed immaterial upon original examination may become important as the proceedings progress, and the court would be obligated to release information material to the fairness of the trial." *Id.* at 183, quoting *Pennsylvania* v. *Ritchie* 480 U.S. 39, 60 (1987). This duty does exist, but revisiting the prior judge's determination of relevance is not to be done sua sponte. "The *Bishop* procedures do not contemplate more than one judicial in camera inspection at the trial level, at least in the absence of changed circumstances[.]" *Commonwealth* v. *Pare*, 43 Mass. App. Ct. 566, 568 n.6 (1997), citing *Commonwealth* v. *Bishop, supra* at 183.

chologist report described above, numbered as pages six through ten of ten. The same envelope also contains five sheets of paper stapled together, which comprise the "missing" pages one through five of the neuropsychologist report.[5] Pages two through four of the stapled packet have a header identical to that described above on pages six through ten of the loose sheets. In contrast, page one is captioned "Report of Neuropsychological Assessment." The first page also lists the dates of assessment as "8/14/96; 8/28/96" and identifies the same examiner whose signature appears on loose sheets nine and ten.

We note that the record contains an affidavit filed by trial counsel for Robles in support of a motion in limine regarding the victim's psychiatric history. In this affidavit, counsel quotes page six of the neuropsychologist report, specifically mentioning that the report was "dated 8/28/96," a date that appears only on the first page of the report. He further avers that when he was allowed to review the documents during stage three of the *Bishop* protocol, they were not in chronological order, and although he was allowed to take notes, he was not allowed to make photocopies. We are satisfied that trial counsel did in fact have access to the entire report. There is no affidavit from trial counsel to the contrary.[6]

b. *Cross-examination on prior false allegations of rape.* The defendants contend that the judge committed reversible error by refusing to allow counsel to cross-examine the victim on a prior false allegation of rape in order to impeach her statement that she had never had sex before. A review of the transcript indicates no factual basis for this claim.

---

[5]In summary, the first five pages of the report review the victim's surgical history; her interim developmental, medical, and educational history; behavioral observations; previous and current testing; and the first part of the assessment's findings, which continue onto pages six and seven. The interim history section includes a reference to behavioral problems with, among other things, "frequent lying" in 1994 and "lying" in 1996, for which the victim was receiving therapy.

[6]The only transcript reference to pages one through five of the report being missing appears on the first day of trial. Feliciano's trial attorney, while introducing pages six through ten to the judge, states simply, "we don't know where the other five are." Such a statement hardly indicates counsel never had access to the documents and certainly does not overcome other apparent signs of defense counsel's access to those pages.

The victim previously had made an allegation of vaginal rape against other individuals stemming from an unrelated incident. The case had been nol prossed by the Suffolk County district attorney's office. Initially, the judge denied a defense motion in limine to inquire into that prior allegation on the basis that a nol prosequi alone was not proof that the allegation had been false.

During cross-examination, the victim attempted to explain the presence of what she thought was vaginal blood on her shirt, stating, "Because I had never had sex before probably." A sidebar conference took place immediately. The judge ruled that the victim's statement in fact had opened the door "to inquire as to whether or not she's had sex before, which opens the door to whether or not she has alleged that she has had . . . vaginal intercourse before, in a rape context or otherwise . . . ." Further, the judge stated she would take the cross-examination on a "question by question basis," but noted that she was not open to retrying the case that had been nol prossed.

Defense counsel continued his cross-examination. The Commonwealth made no objections and the judge did not exclude any question sua sponte. The defendants now assert that there was a continuing prohibition on questions which might lead to evidence of a prior false complaint and that they limited their cross-examination in compliance with that understanding. We disagree. The judge had not precluded all inquiry, but rather had indicated that this line of questioning would require her close attention, i.e., "question by question."

The defendants limited their cross-examination of the victim on the subject of the prior incident. "A lawyer cannot try a case on one theory and then, having lost on that theory, argue before an appellate court about alleged issues which might have been, but were not, raised at the trial. . . . The appeal must be based on what took place at trial, not on anything which is presented for the first time before an appellate court." *Vassallo* v. *Baxter Healthcare Corp.*, 428 Mass 1, 11 (1998), quoting *Commonwealth* v. *Olson*, 24 Mass. App. Ct. 539, 544 (1987). During the cross-examination, the judge did not exercise her discretion to limit the defendants' questions and therefore a finding of abuse of discretion is not possible.

c. *Judicial consideration of prior sexual conduct.* The defendants allege that the trial judge committed error by refusing as fact finder to consider certain references to sexualized conduct in the victim's medical record. They characterize such conduct as a "symptom and result of the [victim's] underlying psychiatric condition." Specifically, they state that the references to sexualized behavior or preoccupations in her mental health record "were not offered to show sexual promiscuity on the [victim's] part . . . which is prohibited by the rape shield statute . . . but to show that the [victim's] mental or emotional condition had caused her to sexually act out in the past."

Under the facts of this case, the distinction is without merit. On review, we conclude that all the conduct excluded was properly barred, either as too remote in time (*Commonwealth* v. *Guisti,* 434 Mass. 245, 248 [2001]) or under the protections of the rape shield statute (G. L. c. 233, § 21B).

5. *Conclusion.* For the reasons outlined above, we find no error and affirm the defendants' convictions in their entirety.

*Judgments affirmed.*